IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 19, 2005

**SAMMIE NETTERS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. P-27490     John P. Colton, Jr., Judge**

_____

**No. W2004-01933-CCA-R3-PC  - Filed May 9, 2005**

_____

The petitioner, Sammie Netters, appeals the Shelby County Criminal Court's dismissal of his petition for post-conviction relief from his conviction for aggravated robbery, a Class B felony. He claims that he received the ineffective assistance of counsel because his attorney failed to investigate his case adequately. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ALAN E. GLENN, J., joined.

Juni Samrat Ganguli, Memphis, Tennessee, for the appellant, Sammie Netters.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; William L. Gibbons, District Attorney General; and Andre J. Thomas, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case arises from the petitioner's robbing a convenience store. After the petitioner's conviction, he appealed. This court summarized the evidence against him as follows:

> Scotty Lake was working alone in a Mapco convenience store in Memphis, Tennessee, when a man entered the premises around 11:00 p.m. on March 2, 1999. The man got a bottle of wine from the cooler and brought it to the counter. . . . Mr. Lake's attention was momentarily diverted, and when he turned back to the customer, the man had a .32 or .38-caliber revolver pointed at Mr. Lake's nose. The assailant told Mr. Lake to open the cash register . . . . Mr. Lake complied with the request[], and the assailant threw the money from the cash register into one of the store's plastic bags. . . .

While the assailant was removing the money from the cash register, . . . [a] customer entered the store and proceeded to the ATM machine without noticing the robbery taking place. . . . When the assailant noticed the customer, he walked backwards toward the ATM machine and pointed the gun at the young man. The assailant took the cash the customer had just retrieved from the ATM as well as the cash in his wallet, then left the store. The ATM customer also fled the premises without speaking to Mr. Lake. Mr. Lake then telephoned his manager and the police.

. . . .

Mr. Lake described the robber as medium complected, wearing a white shirt, white gym shorts, and glasses. The day after the robbery, the police showed Mr. Lake a photo spread with six pictures. . . . The police returned the next day with a different set of pictures, and this time Mr. Lake identified Defendant as the robber. Sergeant Clark with the Memphis Police Department testified that the . . . second photo line-up was prepared, though, when the fingerprints lifted from the bottle and beer cans handled by the robber were returned with a positive match to Defendant's fingerprints.

. . . .

At trial, Defendant . . . maintained that he was actually the robber's second victim at the ATM machine, not the robber himself. Defendant testified that on the night of the robbery, he entered the Mapco store to buy some "wine" and beer for his wedding the following day while his friend waited outside. Defendant said that he brought the "wine" and beer up to the counter and then went to the ATM machine to retrieve some cash so he could complete his purchase. While he was at the ATM machine, a man entered the store and robbed him before he could use the ATM. Defendant stated that he gave the assailant what money he had in his wallet. Defendant testified that after the robber left the store, Defendant and Mr. Lake discussed the robbery, and Mr. Lake asked Defendant how much money had been taken from him. Defendant and his friend then drove away.

State v. Sammie Netters, W2001-02710-CCA-R3-CD, Shelby County, slip op. at 1-3 (Tenn. Crim. App. Jan. 8, 2003), app. denied (Tenn. May 19, 2003).

The jury convicted the petitioner of aggravated robbery, and the trial court sentenced him to twenty years in the Department of Correction as a Range II, multiple offender. The petitioner thereafter filed a petition for post-conviction relief. After the trial court appointed counsel, the petitioner filed an amended petition for post-conviction relief alleging that he received the ineffective assistance of counsel because his trial attorney, among other things, (1) failed to prepare adequately

-2-

for trial, (2) failed to conduct a proper pre-trial investigation, (3) failed to interview and subpoena witnesses, (4) failed to file adequate and timely pre-trial motions, and (5) failed to prepare adequately for the motion to suppress hearing.

At the post-conviction hearing, the petitioner's trial attorney, an assistant public defender, testified that he went to visit the petitioner in the county jail on at least two occasions and met with the petitioner at other times involving court appearances. He said that during the period of time he was representing the petitioner, his case load was forty to fifty cases, many of which involved felony offenses. He said, however, that he had ample time to prepare for the petitioner's trial, amounting to between fifteen and twenty hours of preparation. He said that more complex cases require additional time for preparation but that the petitioner's case was relatively simple because the petitioner confessed, an eyewitness identified him as the robber, and the police investigation revealed the presence of the petitioner's fingerprints.

The trial attorney testified that he did not seek a suppression hearing before the date of the trial regarding the petitioner's confession because the officers who took the petitioner's statement had to fly in from out of state. He said he did not need to review a transcript of their testimony beforehand to prepare adequately for cross-examination of their testimony at trial. He said he did not attempt to suppress the identification testimony of the eyewitness because no justifiable grounds existed for such a motion.

The attorney testified that the petitioner related differing versions of his whereabouts on the night in question. He said he attempted to contact witnesses to verify the petitioner's version of events, but the contact information provided for these witnesses by the petitioner was either inaccurate or did not lead to exculpatory evidence. He said that before the petitioner's testimony at trial, the petitioner had not informed him that he was actually the second victim of the robbery.

The attorney testified that he informed the petitioner of the strength of the state's case against him. He said that he told the petitioner to accept the deal offered by the state because the confession was likely to come into evidence at the trial but that the petitioner did not like the state's offer. He said the petitioner felt his confession should be inadmissible because it was obtained as a result of an officer's pointing a gun at him. The attorney conceded that he did not investigate whether the officer who took the petitioner's confession had ever been disciplined for threatening witnesses.

The petitioner testified that he was in transit from Dallas, Texas, to Tennessee on the day of the robbery, that he gave his attorney a list of witnesses to support this contention, and that his attorney did not follow up on contacting these individuals and preparing his defense. He said that he told his attorney he signed in at Federal Express on the day of the robbery to pick up his fiancé and that his attorney failed to subpoena the Federal Express sign-in sheet. He said that he asked his attorney to subpoena his prior employment records from Mapco and that his attorney failed to subpoena the records. He said he sent his attorney about twenty letters asking him to investigate his case and issue appropriate subpoenas.

The petitioner testified that his attorney sent him discovery materials but that the materials sent to him were incomplete, omitting statements made by the eyewitness. He said he did not discover until the day of trial that the discovery packet sent to him was incomplete. He said he told his attorney that in the past, he had worked with the eyewitness, Mr. Lake, at Mapco. He said his attorney should have attempted to use this information to suppress the state's use of his fingerprints at the scene of the crime.

The petitioner acknowledged that his testimony at trial differed from other testimony he had offered in the case, but he explained that the discrepancy was because he was not allowed to explain himself fully. He said this was his attorney's fault because his attorney did not adequately prepare him for the types and forms of questions he was likely to be asked. The petitioner acknowledged that notwithstanding the discrepancies, he was in the store at the time of the robbery, that he witnessed the robbery, but that he was the other victim.

After considering the testimony and the arguments of counsel, the trial court found that the petitioner failed to prove his allegations by clear and convincing evidence, and it dismissed the petition. Specifically, the court found that there was

> nothing in the record or in Petitioner's testimony that would substantiate Petitioner's contention that the lack of the number of meetings Counsel had with Petitioner directly and adversely affected the outcome of the trial.
> . . . .
> The crux of Petitioner's argument is that his attorney . . . failed to contact and interview witnesses that would support his alibi. . . . The phone numbers that [the attorney] was given to reach these witnesses were no longer in service. . . . Thus, this allegation is without merit.
> . . . .
> This Court finds that the need to contact alibi witnesses in this matter is a moot point since the Petitioner testified at trial that he was actually in Memphis rather than Dallas at the time of the robbery.
> . . . .
> The petitioner alleges that trial counsel did not properly prepare for the hearing and did not investigate his claim about his confession being coerced. . . . [T]rial counsel did prepare for the hearing and therefore the Petitioner's allegation is without merit.
> . . . .
> The Petitioner is alleging that he was not properly informed about the plea bargains that were being offered and was not aware of the strength of the case against him. . . . This court finds that the Petitioner was fully informed of the strength of the case against him and that it was his decision to reject the plea bargain.

On appeal, the petitioner contends the trial court erred in dismissing his petition for post-conviction relief. He argues his trial attorney afforded him the ineffective assistance of counsel because he failed to investigate and prepare the case properly for trial. The state contends that the petitioner received the effective assistance of counsel. We agree with the state.

In order for a petitioner to succeed on a post-conviction claim, the petitioner must show the allegations set forth in his petition by clear and convincing evidence. T.C.A. § 40-30-110(f). A trial court's findings of fact in a post-conviction hearing are conclusive on appeal unless the evidence in the record preponderates against those findings. See Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990). However, we review the trial court's conclusions of law–such as whether counsel's performance was deficient or whether that deficiency was prejudicial–under a purely de novo standard. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103.

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show that (1) counsel's performance was deficient, and (2) the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

The petitioner's trial attorney testified at the post-conviction hearing that because the petitioner's case was rather simplistic in that the state had an eyewitness, a confession, and fingerprint evidence, he only spent fifteen to twenty hours preparing the petitioner's case. He said he fully informed the petitioner of the strength of the state's case. He said he attempted to contact a potential alibi witness but was unsuccessful. He said he argued the motion to suppress on the day of trial because the witnesses had to be flown in from another state. We conclude that the petitioner's attorney's performance was not constitutionally deficient and that the record does not

preponderate against the trial court's finding that the petitioner failed to prove his allegations by clear and convincing evidence.

Based upon the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE